Adam W. Cook
Shane C. Coffey
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, AK 99501
acook@bhb.com
scoffey@bhb.com
Telephone 907.276.1550
Facsimile 907.276.3680

Attorneys for Plaintiff

COPY
Original Received

JUL 10 2019

Clerk of the Trial Courts

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| ALASKA AEROSPACE CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BRPH ARCHITECTS-ENGINEERS, INC., ) <br> ) <br> Defendant. ) <br> ) | Case No. 3AN-19- 08224 CI |

## COMPLAINT

COMES NOW Plaintiff, Alaska Aerospace Corporation ("AAC"), by and through its attorneys, Birch Horton Bittner & Cherot, and for its complaint against the Defendant, BRPH Architects-Engineers, Inc. (hereinafter "BRPH"), complains and alleges as follows:



ALASKA AEROSPACE V. BRPH ARCHITECTS-ENGINEERS
COMPLAINT
505274/72/00814409.DOCX

CASE NO. 3AN-19-_____CI
PAGE 1 OF 8

Exhibit A
Page 1 of 9

## PARTIES

1. AAC is a public corporation of the State of Alaska created in 1991 pursuant to AS 26.27.010, *et seq.*, and is duly authorized, licensed, and competent to bring this action.

2. Upon information and belief, BRPH is a foreign corporation formed under the laws of the State of Florida with its principal place of business in the State of Florida and is duly authorized and certified to transact business in the State of Alaska.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to AS 22.10.020 as the amount in controversy exceeds $100,000.

4. Venue is proper in the Third Judicial District pursuant to Alaska R. Civ. P. 3(c).

5. Jurisdiction and venue in this Court are also proper pursuant to a forum selection provision contained in the agreement between the parties which in part forms the basis for this dispute.

## STATEMENT OF FACTS

6. AAC owns and operates a state-of-the-industry spaceport, the Pacific Spaceport Complex-Alaska ("Spaceport"), located on Kodiak Island, Alaska that provides access to planetary orbital space for commercial and government interests.

7. One component of the Spaceport is the Spacecraft Assembly and Transfer facility (hereinafter "SCAT"). The SCAT is a self-contained, environmentally-controlled mobile structure used to transport launch vehicles and payload assemblies.

8. The SCAT transports vehicles and assemblies between an assembly facility, known as the Integration and Processing Facility, and a launch structure, known as the Launch Service Structure.

9. On August 25, 2014 the SCAT experienced substantial damage during a launch. AAC concluded that the SCAT had to be replaced. The reconstruction work would require retention of an engineer-of-record.

10. AAC used BRPH for the engineering services. The parties had an existing relationship. On or about January 11, 2008, AAC and BRPH had entered into a written "Indefinite Delivery/Indefinite Quantity Agreement" (the "Contract") entitled "Spaceport Design and Engineering Services." The Contract provided that BRPH would perform work on a task order basis pursuant to notices to proceed from AAC.

11. In March 2015 AAC issued, and BRPH accepted, Notice to Proceed 15-0039, in which BRPH agreed to "provide architectural and engineering services to support the Return to Flight project at the Spaceport." The Return to Flight Project (the "Project") included reconstruction of the SCAT. Because BRPH had already started providing engineering services to the Project, the Notice to Proceed took effect retroactively on October 25, 2014.

12. Pursuant to the Contract and Notice to Proceed 15-0039, BRPH was responsible for preparing and assessing critical design aspects, as well as providing engineering oversight, of reconstruction of the SCAT ("SCAT Reconstruction").

13. The SCAT is roller-mounted on steel rails ("SCAT Rails") that run between two structures. The SCAT Rails are similar to steel I-beams, with the flat surface at the top of the beam ("Flange") and the vertical column at the center of the I-beam ("Web").

14. Prior to reconstruction, BRPH evaluated the SCAT Rails and found that, notwithstanding the damage to the SCAT, the SCAT Rails still met the allowable stress requirements for the maximum load combinations. BRPH determined that full replacement of the rails was not required. Accordingly, the SCAT Rails were reused and were not replaced.

15. However, the system of rollers atop the rails used to transport the SCAT needed to be replaced. In late 2014, representatives from the manufacturer of the rollers which were originally installed under the SCAT, Hilman Rollers ("Hilman"), inspected the original rollers and recommended their replacement.

16. AAC obtained a price quote from Hilman for new rollers to replace the four original, damaged rollers. The quote included a schematic diagram of the proposed rollers and a description of their design specifications. The price quote stated that the proposed new rollers (the "Rollers") had a capacity of 75 metric tons.

17. AAC delivered the price quote to BRPH for review. On August 9, 2016, BRPH signed its approval for the Rollers design plans. A copy of the approved design plan is attached hereto as Exhibit 1.

18. On or about August 9, 2016, after AAC's receipt of BRPH's design approval, and in reliance upon BRPH's professional determination that the proposed Rollers were suitable for the Project, AAC purchased the Rollers from Hilman. AAC installed the Rollers during completion of the SCAT reconstruction, with BRPH's oversight.

19. In or around April 2018, following movement of the SCAT using the Rollers, AAC noticed that the Flange of the SCAT rails had started to bend downward

and deform. AAC also noticed that a convex groove, or ridge, had developed at the very center of the Flange, directly above the Web.

20. The ridge corresponded in size to the Rollers' index ("Index") — a female groove tooled into the center of each individual roller which fits into a male counterpart inside the Rollers' housing and assists in stabilizing lateral forces. The ridge was created when the index cut into the SCAT Rail as the SCAT moved.

21. The Index is the same width as the load-bearing Web under the Flange, 0.36 inches, which meant that the Flange—not the Web—was carrying all, or nearly all, of the weight of the SCAT. This improper distribution of weight caused the deformation of the SCAT Rails.

22. AAC immediately informed BRPH of the deformation to the SCAT Rails. BRPH visited the Spaceport and inspected the SCAT Rails in November 2018. Immediately afterwards, BRPH emailed AAC and advised that "the primary cause of the curvature appears to be the roller index." BRPH concluded that the Rollers were not placing the weight on the Web of the SCAT Rails as they were supposed to, and that the SCAT Rail had deformed to such an extent that it was "not functioning as intended."

23. BRPH recommended replacement of the Rollers with dual-index rollers, in order to address the need for better distribution of weight. BRPH advised that the SCAT Rails would need to be completely replaced within less than a year's time.

### FIRST CLAIM FOR RELIEF
[Breach of Contract]

24. AAC realleges and incorporates the statements above as though fully set forth herein.

25. Pursuant to the Contract between AAC and BRPH, BRPH was obligated to provide professional and competent design work and supervision to the Return to Flight Project, including roller replacement for the SCAT Reconstruction.

26. BRPH's approval of the unsuitable Hilman Rollers, and BRPH's supervision of the installation of the Hilman Rollers onto the SCAT Rails, breached BRPH's obligations to AAC under the Contract.

27. BRPH's breach of the Contract was the direct and proximate cause of significant damage to the SCAT Rails. AAC has incurred significant costs investigating and repairing the damage, and AAC will incur additional costs in the future replacing the SCAT Rails.

28. BRPH's breaches of the contractual duties owed to AAC have caused AAC to suffer, and continue to suffer, damages in excess of $100,000, the exact amount to be proven at the time of trial.

**SECOND CLAIM FOR RELIEF**
[Breach of the Implied Covenant of Good Faith and Fair Dealings]

29. AAC realleges and incorporates the statements above as though fully set forth herein.

30. There is implied in every contract a covenant of good faith and fair dealing by all parties.

31. BRPH breached the implied covenant by, among other things, approving the acquisition and installation of the Hilman Rollers.

32. BRPH's breaches of the implied covenant are the direct and proximate cause of significant damages AAC has suffered as AAC's real property has been

damaged, AAC has incurred significant costs investigating, monitoring, and repairing the damage, and AAC will have to reconstruct the SCAT Rails using new materials.

33. BRPH's breaches of the implied covenant have caused AAC to suffer damages in excess of $100,000, the exact amount to be proven at the time of trial.

### THIRD CLAIM FOR RELIEF
[Professional Negligence]

34. AAC realleges and incorporates the statements above as though fully set forth herein.

35. BRPH, a professional engineering firm, was responsible for assessing critical design aspects and providing engineering oversight of the SCAT Reconstruction, and, as such, had a duty to perform its responsibilities and obligations with the degree of care that a reasonably prudent, skilled, diligent, and qualified professional would exercise under similar circumstances.

36. BRPH breached this duty of care by negligently performing its design and oversight duties and otherwise failing to perform its duties with the requisite degree of care that a reasonably prudent, skilled, diligent, and qualified professional would exercise under the circumstances.

37. BRPH's negligent performance of its professional duties is the direct and proximate cause of the significant damages and injuries AAC has suffered as AAC's property has been damaged, AAC has incurred significant costs investigating, monitoring, and repairing the damage, and AAC will have to reconstruct the SCAT Rails using new materials.

38. As a direct and proximate result of BRPH's breach of its professional duties, AAC has suffered and will continue to suffer actual damages in excess of $100,000, the exact amount to be proven at the time of trial.

WHEREFORE Plaintiff prays for the following relief:

1. For judgment against BRPH on each of these claims in an amount in excess of $100,000, the exact amount to be proven at the time of trial;

2. For costs, prejudgment interest, and reasonable attorneys' fees incurred in maintaining this action; and

3. For such other and further relief as the Court deems just and proper.

DATED this 10th day of July, 2019.

BIRCH HORTON BITTNER & CHEROT
Attorneys for Plaintiff

By: _____
Adam W. Cook, ABA #0611071
Shane C. Coffey, ABA #1705018

Exhibit 1
Page 1 of 1

**NOTE:**
1. DIMENSIONS IN INCHES [MILLIMETERS]
2. VERTICAL CAPACITY: 75 METRIC TONS
3. LATERAL CAPACITY: 25 METRIC TONS
4. UPLIFT CAPACITY: 9.5 METRIC TONS
5. W8 x 40 I-BEAM AND OTHER TROUGH COMPONENTS SUPPLIED BY OTHERS AS SHOWN ON KODIAK LAUNCH COMPLEX / IPF AND SCAT DRAWING #IS-2, REVISION 11 [08-30-02]
6. ANGLE MUST BE MODIFIED TO DIMENSION SHOWN OR REMOVED

APPROVED BY: [signature]
DATE: 9 AUG 2016

**HILMAN INC.**
12 TIMBER LANE, MARLBORO, NJ 07746 USA

MODIFIED ROLLER 75-OT-15047
BRPH / AADC

DWG. NO: 75-OT-15047